## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ROSE PARTLOW, on behalf of the proposed Minnesota Rule 23 | Case No. _____ |
| Plaintiff, | |
| vs. | **NOTICE OF REMOVAL OF CIVIL ACTION** |
| OTHER GUYS, L.L.P. d/b/a Norman Quacks and MONIQUE SKAMSER | |
| Defendants. | |

Defendants Other Guys L.L.P. and Monique Skamser (collectively, "Defendants"), by and through their undersigned attorney, hereby remove this action from the District Court, Washington County, Minnesota to this United States District Court for the District of Minnesota. Defendants respectfully state that the grounds for removal of this action to this Court are as follows:

1.     On June 17, 2021, plaintiff Rose Partlow ("Plaintiff") served Defendants with a lawsuit that was filed in state court (the "State Court Lawsuit"). A copy of the Complaint in the State Court Lawsuit is attached hereto as **Exhibit A**.

2.     Pursuant to 28 U.S.C. §§ 1332 and 1441(a), Defendants remove this action to the United States District of Minnesota, which is the federal judicial district in which the State Court Lawsuit is pending.

3.     Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the

defendant or the defendants, to the district court of the United States . . . ." This Court has original jurisdiction over "federal question" cases, *i.e.*, those cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

4.      In her Complaint, Plaintiff, a former employee of Other Guys, L.L.P. alleges, among other things, that Defendants violated the federal Fair Labor Standards Act ("FLSA") by failing to pay her and a putative class of persons she seeks to represent for all overtime worked and all minimum wages due. Removal of this action is proper under 28 U.S.C. § 1441(a) because this is a civil action asserting claims under the laws of the United States over which the federal district courts would have original jurisdiction had the action been brought in federal court.

5.      This Court may also exercise supplemental jurisdiction over the state law claims in the State Court Lawsuit pursuant to 28 U.S.C. § 1367 because such claims are based on the same alleged facts that form the basis of Plaintiff's federal cause of action and/or are part of the same case or controversy.

6.      This Notice of Removal is timely under 28 U.S.C. § 1446(a) and (b) and Fed. R. Civ. P. 26(a)(1)(C) because it is being filed within thirty (30) days after receipt of the Complaint.

7.      Defendants have also filed this action and a copy of this Notice of Removal of Civil Action with the Clerk of Court for the District Court, Tenth Judicial District, Washington County, the state court in which this action was commenced and pending at the time this Notice of Removal was filed with this Court, as required by 28 U.S.C. § 1446(d).

8.    All defendants have consented to the removal of this case.

9.    Nothing in this Notice of Removal is intended or should be construed as any type of express or implied admission by Defendants of any fact alleged by Plaintiff, of the validity or merits of any of Plaintiff's allegations, or of any liability for the same, each of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Defendants' rights, claims, remedies, and defenses in connection with this action, all of which are hereby expressly reserved.  Further, by filing this Notice of Removal, Defendants do not intend to waive, and hereby reserve, any objection as to service, personal jurisdiction, and all other procedural and substantive defenses which are available to them.

WHEREFORE, Defendants request that the above-captioned action be removed to this United States District Court for the District of Minnesota.

Dated:  July 19, 2021

Respectfully submitted,

**JACKSON LEWIS, P.C.**
*/s/ Elizabeth S. Gerling*
Elizabeth S. Gerling #395372
150 South Fifth Street, Suite 3500
Minneapolis, Minnesota 55402
Telephone: (612) 341-8131
Elizabeth.gerling@jacksonlewis.com

- and -

Robert J. Bowes (pro hac vice to be submitted)
Park Center Plaza I, Suite 400
6100 Oak Tree Blvd.
Cleveland, OH        44131
Phone: (216) 750-4345
Robert.Bowes@jacksonlewis.com

**ATTORNEYS FOR DEFENDANTS**

# EXHIBIT A

STATE OF MINNESOTA

DISTRICT COURT

COUNTY OF WASHINGTON

TENTH JUDICIAL DISTRICT

|  |  |
|---|---|
| | Case Type: Employment |
| Rose Partlow on behalf of the Proposed Minnesota Rule 23, <br><br> Plaintiff, <br><br> v. <br><br> Other Guys, L.L.P. d/b/a Norman Quacks, and Monique Skamser as an individual, <br><br><br> Defendants. | **SUMMONS** |

### THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANTS:

1.     YOU ARE BEING SUED. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

2.     YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this Summons a written response called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the persons who signed this Summons located at: see addresses below.

3.     YOU MUST RESPOND TO EACH CLAIM. The Answer is your written response to the Plaintiffs Complaint.  In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for In the Complaint, you must say so in your Answer.

4.     YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint If you do not want to contest the claims stated In the Complaint, you do not need to respond. A Default Judgment can then be entered against you for the relief requested in the Complaint.

5.     LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get

1

legal assistance. Even If you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6.      ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice.  You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: June 9, 2021                           SATRE LAW FIRM

*Eric D. Satre*
_____
Eric D. Satre, MN Bar No. 183015
Attorney for Plaintiff
INTERNATIONAL PLAZA
7900 International Drive
Suite 300-7044
Bloomington, MN 55425
Telephone: (651) 212-4919
Facsimile: (651) 212-4203
esatre@satrelaw.com
admin@satrelaw.com

STATE OF MINNESOTA

COUNTY OF WASHINGTON

DISTRICT COURT

TENTH JUDICIAL DISTRICT

| | |
|---|---|
| Rose Partlow on behalf of the Proposed Minnesota Rule 23,<br><br>Plaintiff,<br><br>v.<br><br>Other Guys, L.L.P. d/b/a Norman Quacks, and Monique Skamser as an individual, | Case Type: Employment<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff, Rose Partlow on behalf of herself and the Proposed Minnesota Rule 23 Class ("Rule 23Class"), by their attorney, Eric D. Satre bring the following action against Defendants for unlawfully requiring servers to contribute their gratuities to a fund or pool in violation of Minn. Stat. § 177.24 and its and improperly retaining a portion of servers' and bartenders' gratuities and improper wage practices

**PARTIES**

1.      Plaintiff Rose Partlow, (hereinafter "Plaintiff") is an adult female resident of Minnesota.

2.      From approximately April 2019 until her resignation October 30, 2019, Plaintiff Rose Partlow (hereinafter "Partlow") worked as a server at Other Guys, L.L.P. d/b/a Norman Quacks (hereinafter "Quacks").

3.      Defendant Other Guys, L.L.P. d/b/a. Norman Quacks, is a MinnesotaLimited Liability Partnership whose listed Chief Executive Office address is 230 6th Str Box 282, Marine on St Croix, MN 55047 and a principal  place of business address listed as 843 W. Broadway Street E, Forest Lake, MN 55025-5502.

4.      Defendant Monique Skamser acted in the interest of the employer Quacks in

1

relation, to the direct service employees she required to split tips and clock out for short periods of time when the restaurant was not busy while staying on the premises to clock back in if customers arrived.

5.      Quacks' Stillwater and Forest Lake restaurants were operated as a single, unified business and Plaintiff was an employee of the Defendants during the relevant timeperiods herein.

## JURISDICTION AND VENUE

Plaintiff re-alleges and incorporate by reference the above paragraphs as if fully set forth herein.

6.      Venue in the State of Minnesota is proper pursuant because the events or omissions giving rise to the claim occurred in Minnesota.

## GENERAL FACTUAL ALLEGATIONS

Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

7.      Quacks has been in operation at its Forest Lake location since 2001.

8.      Plaintiff was employed full-time as a server at Quacks Stillwater and Forrest Lake [for training purposes] locations, earning an hourly wage as well as tips.

9.      Plaintiff was hired by Quacks on April 30, 2019, as a server, through the date of her noticed resignation on October 30, 2019.

10.     Plaintiff and members of the Rule 23 Class are current and former servers and bartenders at Quacks two locations.

11.     Plaintiff and class members were forced to attend training on several days during the build up to the opening of Quacks Stillwater location at both the Stillwater and Forest Lake restaurants without being paid.

2

12.     Quacks management established available dates, times and locations for specific types of training which were mandatory. Plaintiff and her similarly situated servers and bartenders were expected to make themselves available to attend the training. However, although the restaurant specific training was required by Defendants, and specific to that restaurant Defendants refused to pay their employees for time spent during that training, in violation of the Fair Labor Standards Act and Minnesota Fair Labor Standards Act.

13.     Quacks' co-owner Gordon Skamser claims on the company web-site he has extensive restaurant operations experience having at least 30 years of experience with in a one-time major national chain restaurant. That "extensive management and ownership experience in the Minnesota restaurant industry in over more than two decades" would have exposed him to Minnesota Department of Labor rules and regulations regarding wage and hour as well as tip sharing laws.

14.     Defendant Monique Skamser also claims she has no less than nineteen years' experience as an owner, operator and manager of Quacks.

15.     Ms. Skamser was responsible for running the restaurant including but not limited to: personnel; hiring; firing; scheduling; payroll; time recording procedures; server team and schedule assignments; and more.

16.     On more than one occasion, Defendant Ms. Skamser changed and thereby manipulated employee time records, shaving their hours so employees would be paid less than the actual hours worked. The payroll records Defendant created for Plaintiff also shaved hours so she would be underpaid. The records do not match her contemporaneous logs. Those hours were understated to avoid paying overtime.

17.     On a regular basis, Plaintiff was directed to clock out and be present and waiting, on-site, until there were enough customers. Then she would be directed to clock

back in to provide direct service to patrons.

18.     The time periods of the forced clock outs ranged from several minutes up to two hours.  However, unlike an on-call arrangement, Plaintiff was not permitted to use the time for personal business.  Instead, she was required to be present at the workplace and ready to resume work.  During the forced off-the-clock time during her scheduled shifts, Plaintiff would see other servers having tables assigned while Ms. Skamser would instruct her to continue and wait [illegally] off the clock.

19.     Quacks states on their website that *"all tables are offered for 90 minutes from time of seating. Extended dining time can be negotiated depending on business and is at the discretion of management. Gratuity of 18% is added to parties of 7 or more."*

20.     On most occasions where a party of 7 or more would arrive, Mrs. Skamser would personally select the server(s) to assign to the table or often provide the service herself.

21.     On occasions where a server would provide direct service to  a party of 7or more, they would not receive the 18% gratuity added by Quacks to the customer's bill. In addition, nowhere on a customer's bill at Quacks does it state that the gratuity would not be the property of the direct service provider.

22.     Defendant Monique Skamser also freely announced that her children [members of management] needed to make money from tips.

23.     Defendant Monique Skamser would direct servers and bartenders to tip out to her children even though they were serving as managers at Quacks.

24.     In addition to being forced to split their tips with the owners and managers, Servers were also required to tip-out the bartenders, expediters know as expo [food runners] and the hosts.

25.     Defendant Quacks used server and bartender tip outs to subsidize the pay of

4

family members of the Skamsers, who held management positions.

26.     Servers and bartenders at Quacks serve food, wine and other alcoholic beverages to customers during regular and event service shifts. Plaintiffs have served food, wine, and other alcoholic beverages during these shifts.

27.     Defendant Quacks devised a 'team server' format for delivering service whereby two servers would have their credit card tips combined and then divided amongst the team at the discretion of the manager.

28.     Server teams were not informed of the method for the division of tips. They would share login information into the Point-of-Sale system but they were not told which team member had the credit card tips allocated to their payroll.

29.     As a result, Quacks inaccurately reported Plaintiff's income to the Internal Revenue Service and the Minnesota Department of Revenue.

30.     More than 60 individuals have worked as servers and approximately more than 20 individuals have worked as bartenders between the two locations. Since Plaintiff commenced employment,

31.     Defendant Quacks has paid its servers and bartenders an hourly wage which is equal to the minimum wage during the relevant time periods herein.

32.     Defendant Quacks provided and has provided servers and bartenders, including Plaintiff, with a W-2 form, for tax purposes.

33.     Defendant Quacks, through its management [including Defendant Monique Skamser] trains and supervises the servers, bartenders and managers at Defendants' restaurants.

34.     Plaintiff and rule 23 class members were trained and supervised by Defendant Quacks management and Defendant Monique Skamser.

35.     Defendants are aware that  Minnesota labor laws are different than federal labor laws.

36.     The Managers in-charge of servers and bartenders at Quacks take direction regarding labor relations, business operations, and their management of servers and bartenders from the owners and primarily Defendant Monique Skamser.

### FACTUAL ALLEGATIONS RELATED TO REGULAR SERVICE GRATUITIES

Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

37.     During regular service, customers at Quacks leave gratuities for servers and bartenders in the form of both cash and credit card tips. These tips are amounts left for servers and bartenders are more than the amount of the customers' bills. Plaintiff received those tips.

38.     The tips customers leave for servers during regular service shifts are left voluntarily, except for larger parties.

39.     For those parties larger than 7 (seven), Quacks imposes a mandatory gratuity of a percentage of the total bill listed at 18 percent.

40.     Many of these larger than 7 (seven), parties would not been assigned to the serves on schedule. They would often be taken by a member of management, family member or owner Mrs. Monique Skamser.

41.     Servers and bartenders were expected and required to tip out members of management/family members even when those individuals had not provided direct service.

42.     Defendants' actions subsidized the pay of managers who also were the owners' children.

43.     Quacks did not provide a printed notice to  customers that the mandatory gratuity is imposed on customers is not intended solely for the server. In addition, there was

6

no notice of the tip scheme: printed; stamped; or written in bold type on the menu or a placard or the front of the statement of charges.  In fact, no printed material was given to the customers to inform them that the charge would not be paid to the direct service employee.

44.     Defendant Quacks management tracks which server and/or bartender served individuals or a table of customers during regular service in its point-of-sale computer system.

45.     Defendant Quacks also track each server's and bartender's sales per shift during regular service in its point-of-sale computer system.

46.     Defendants Quacks operates its restaurants such that each server operates as his/her own "bank" during each evening. This means that each server theoretically retains all the cash she/he receives from customers during his/her shift.

47.     At the end of each shift the servers and bartenders would receive a report which would indicate that persons

48.     At the end of the shift the servers and bartenders would receive a printed receipt including the server's net sales as well as the total sales and the credit card gratuities received by the server through the shift.

49.     Then the server was required to report to Management and they were directed to split their earned tips with indirect service employees as well as members of Management. As a result, the tips given to Plaintiff as the direct service employee were diverted by Management for its' labor costs.

50.     The servers were also forced to tip out a percentage of their tips to the bartenders.

51.     Defendant Quack's Management and Owners then took control of the tip pool and redistributed the money they took from each of the direct service employees in order to pay more to the other employees.

52.     Servers performed direct service for the customers and the food expediters, bussers, and bar backs utilized by Quacks were all not direct service employees. Those indirect service employee is a person who assisted the servers.

53.     Nevertheless, Defendant required Plaintiff and other Rule 23 Class Members to pay the gratuities, they received from the customers to a fund or pool that was operated by Defendants, at Defendants' discretion, for the benefit of Defendants who were then able to compensate the indirect service employees as well as members of Management with money earned by Plaintiff and the Class Members.

54.     Defendants, at their own discretion, took the funds, and distributed them in whatever manner Defendants choose, at entirely management's discretion.

55.     Plaintiff and the other Class Members were not told how their tips were redistributed by management. There was no specified formula and some members of management were given those tips.

56.     This forced tip fund or pool was operated for the benefit of Defendants since it resulted in additional [untaxed and unreported] compensation being paid to the indirect service employees and the Mangers. The direct service employees were forced to fund the additional compensation to those persons.

57.     Plaintiff and the other direct service employees were denied compensation they earned and forced to use those funds to pay labor costs for Defendants.

58.     When direct service employees complained about the illegal tip pooling practice, they suffered retaliation. They suffered a reduction in their shifts, being given less favorable shifts, being forced to clock out for extended periods of their shift, and Defendant Monique Skamser subjected them to hostility and retaliation.

8

## FAILURE TO PAY FACTUAL ALLEGATIONS

59.     Plaintiff was employed by Defendants from approximately of April 2019 until her resignation on or about October 30, 2019.

60.     Defendant Skamser told Plaintiff that she would be required to report to training, which lasted approximately 25 hours.

61.     The training consisted of all regular server required tasks as well a requirement to support the direct service team members working on the shifts.

62.     Plaintiff was required to sit for a two-hour test about her training before she was added to the schedule.

63.     Plaintiff was not paid for the training hours or for the testing period.

64.     Defendants benefited from Plaintiff's training period by the receipt of her labor for which she received no compensation.

65.     Based on knowledge and belief, this was the standard practice by Defendants.

66.     Defendants, pursuant to its policies and practices, failed and refused to pay minimum wages for hours worked to Plaintiff and similarly situated co-workers who were required to endure the unpaid training period.

67.     Plaintiff made a demand for payment via certified mail on May 24, 2021.

68.     Plaintiff was not paid her outstanding earned wages by the next scheduled pay period as required under Minnesota Statute §181.14.

69.     Defendants failed to pay Plaintiff on the next regularly scheduled pay day.

## MINNESOTA CLASS ACTION ALLEGATIONS

Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

9

70.     Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Minnesota Rules of Civil Procedure. The Rule 23 Class is defined as follows: Rule 23 Class: All individuals who are or have been employed by Defendant as bartenders and/or servers at Defendant Quacks restaurants from April 2019 until the date of final judgment in this matter.

71.     The individuals in the Rule 23 Class as defined above are so numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, Plaintiff and members of the Rule 23 Class have all been affected by Defendants' violations of law.

72.     There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members, including, but not limited to:

a.  The nature and scope of Defendants' policies with regard to servers' and bartenders' gratuities;

b.  Whether Defendants unlawfully required class members to contribute their gratuities to a fund or pool operated for the benefit of other employees;

c.  Whether Defendants unlawfully required class members to contribute their gratuities to a fund or pool operated for the benefit of Defendants;

d.  Whether Defendants unlawfully participated in any agreement by class members to contribute their gratuities to a fund or pool operated for the benefit of other employees; and

e.  The proper measure of damages sustained by the Rule 23 Class. 66. Plaintiffs' claims are typical of those of the Rule 23 Class. Plaintiffs, like other members of the Rule 23 Class, were denied their rights to gratuities under Minnesota law.

10

73.     Given Plaintiff's losses, she has the incentive and is committed to the prosecution of this action. She will fairly and adequately protect the interests of the Rule 23 Class and have retained as counsel a law firm that is sufficiently experienced in wage and hour litigation and multi-party litigation to be appointed as class counsel. There are no conflicts between Plaintiffs and the class they seek to represent.

74.     This action is maintainable as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the Rule 23 Class which would establish incompatible standards of conduct for Defendants.

75.     This action is maintainable as a class action because questions of law and fact common to the Rule 23 Class predominate over any questions affecting only individual members of the Rule 23 Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

76.     Plaintiff intends to send notice to all members of the Rule 23 Class to the extent required by Rule 23 of the Minnesota Rules of Civil Procedure.

### FIRST CAUSE OF ACTION
(Violation of Minn. Stat. § 177.24)

Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

77.     Plaintiff and the Rule 23 Class were or are Defendants' employees within the meaning of Minn. Stat. § 177.23 and Mimi. Stat. § 177.24.

78.     Defendant is, or was, the employer of Plaintiff and the Rule 23 Class within the meaning of Minn. Stat. § 177.23 and Minn. Stat. § 177.24.

11

79.     Plaintiff and the Rule 23 Class members received gratuities from customers for personal services rendered within the meaning of Minn. Stat. § 177.23 and Minn. Stat. § 177.24 as well as Minn. Rule 5200.0080 Gratuities/Tips Credits.

80.     Defendants unlawfully required Plaintiff and the Rule 23 Class to contribute or share the gratuities received by them as employees with Defendants as their employer.

81.     Defendants unlawfully required Plaintiff and the Rule 23 Class to contribute any or all of a gratuity received by them as employees to a fund or pool operated for the benefit of the employer or other employees.

82.     Defendants' conduct is in violation of Minn. Stat § 177.24 was willful and not the result of mistake or negligence.

83.     Pursuant to Minn. Stat. § 177.24: ... any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property of the employee. No employer may require an employee to contribute or share a gratuity received by the employee with the employer or other employees or to contribute any or all the gratuity to a fund or pool operated for the benefit of the employer or employees.

84.     By failing to treat Plaintiff and the Rule 23 Class's gratuities as property of the employees, Defendants violated Minn. Stat. § 177.24.

85.     By requiring Plaintiff and the Rule 23 Class to contribute and share gratuities received by them with the employer or other employees, Defendants violated Minn. Stat § 177.24.

86.     As a direct result of Defendants' conduct, Plaintiff and the Rule 23 Class were unjustly deprived of their rightful property and they have been damaged.

12

## SECOND CAUSE OF ACTION
(Conversion)

Plaintiff re-alleges and incorporate by reference the above paragraphs as if fully set forth herein.

87.     Pursuant to Minn. Stat 177.24 ... any gratuity received by an employee or deposited in or about a place of business for personal services rendered by an employee is the sole property of the employee.

88.     By unlawfully retaining a portion of gratuities received by Plaintiff and the Rule 23 Class, Defendants wrongfully exercised and retained dominion and control over Plaintiff's and the Rule 23 Class's property.

89.     By unlawfully retaining and redistributing a portion of gratuities received by Plaintiff and the Rule 23 Class, Defendants wrongfully denied Plaintiff and the Rule 23 Class's right to access said property.

90.     By misrepresenting the calculations, they used to determine the gratuities to be provided to Defendants' other employees, Defendants unlawfully retained and distributed even more of the servers' gratuities.

91.     Due to Defendants' conversion, Plaintiff and the Rule 23 Class were unjustly deprived of their rightful property.

## THIRD CAUSE OF ACTION
(Unjust Enrichment)

Plaintiff re-alleges and incorporate by reference the above paragraphs as if fully set forth herein.

92.     By unlawfully retaining and re-distributing Plaintiff's and members of the Rule 23 Class's gratuities, Defendants obtained substantial benefits and have been unjustly enriched.

13

93.     Defendants' conduct was willful and not the result of mistake or inadvertence. It would be inequitable for Defendants to retain the benefits received.

94.     Defendants misrepresented the calculations they used to determine the amount of class members' gratuities to be distributed to Defendants' other employees.

95.     By misrepresenting the calculations, it used, Defendants obtained additional benefits and have been further unjustly enriched.

96.     In addition, Defendants forced servers and bartenders including Plaintiff to attend several shifts of unpaid training which culminated in a required two-hour test before they could officially begin to earn pay.

97.     As a direct result of Defendants' unlawful conduct, Plaintiff and members of the Rule 23 Class have suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
(Violation of Minnesota Statutes §181.03)

Plaintiff re-alleges and incorporates herein by reference the allegations in the preceding paragraphs:

98.     Because Defendants did not track the amounts contributed to the illegal tip pool, Defendants defrauded Plaintiff and the IRS and the Minnesota Department of Revenue by knowingly including income which Plaintiff and Rule 23 class members did not receive.

99.     Defendants did not maintain records for the amounts they redistributed to indirect service employees including bartenders, bussers, weekend buffet food runners and expos.   As a result, although Defendants operated a tip-pool and reported income that did not accurately reflect the income to each person in the pool and the servers' income would almost always be over-stated.

100.     Therefore, Defendant is made it appear that the wages paid to Plaintiff and

14

Rule 23 class members from 2019 through the present are greater than the amount actually paid to them.

101.    As a result, Plaintiff and the Rule 23 class members are suffering damages, including the fact they have been and will be assessed taxes on income they did not receive.

## FIFTH CAUSE OF ACTION
(Violation of  26 U.S. Code § 7434)

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

103.    Defendants provided fraudulent information to Plaintiff, Rule 23 class members and the IRS when it knowingly issued a W-2 for the 2017, 2018, and 2019 Tax Years with overstated income amounts.

104.    The filings of those fraudulent return have and will continue to harm Plaintiff and the Rule 23 class members by having overstated their incomes in 2019 and forcing them to pay taxes at a higher rate to cover Defendant's scheme.

105.    As a result, Plaintiff and Rule 23 class members are suffering damages including increased income tax liability.

## SIXTH CAUSE OF ACTION
(Violation Of Minnesota Statutes §181.14)

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

106.    Following her resignation, Plaintiff requested via certified mail that Defendants pay the wages due and owing to her.

107.    Defendant refused to pay plaintiff her full pay in a timely manner.

108.    Defendants' failure to pay Plaintiff the wages owed is a violation of Minnesota Statute §181.14 et seq., subjecting the employer to penalties as provided under the statute.

109.    Plaintiff also is entitled to costs and disbursements, and attorney's fees as provided under Minnesota Statute §181.171.

110.    Therefore, Plaintiff has been damaged in the amount of his unpaid wages as well as the 15-day daily wage penalty and his reasonable attorney fees and costs.

### SEVENTH CAUSE OF ACTION
(Violation The FLSA and MFLSA)

Plaintiff alleges and incorporates herein by reference the allegations in the preceding paragraphs.

111.    At all times relevant hereto, Defendants have been, and continue to be an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (hereinafter "FLSA"). At all relevant times, upon information and belief, Defendants have had gross operating revenues in excess of $500,000.00.

112.    Defendants are, individually and collectively, "employers" of Plaintiff and similarly situated individuals as defined by 29 U.S.C. § 203(d).  In addition, Defendant Quacks is a large employer under the MFLSA and the FLSA

113.    The FLSA requires each covered employer, such as Defendant herein, to compensate all non-exempt employees at a rate of not less than one- and one-half times the regular rate of pay for work performed in excess of forty hours per work week. Likewise, the Minnesota Fair Labor Standards Act requires each covered employer, such as Defendant herein, to compensate all non-exempt employees at a rate of not less than one and one half times the regular rate of pay for work performed in excess of forty eight hours per work week.

114.    Plaintiff is entitled to be paid overtime compensation for all hours worked in excess of forty under federal law and forty-eight under state law, as well as minimum wages for all hours worked.

115.    Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff for all hours worked in excess of forty hours, and minimum wages for hours worked which should have included training and waiting time.

116.    By failing to provide Plaintiff with lawful overtime and minimum wage compensation, Defendants have violated the FLSA, 29 U.S.C. § 201 et seq. and Minn. Stats. §§177.24 and 177.25.

117.    The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

118.    Among other remedies, Plaintiff seeks damages in the amount of his respective unpaid overtime and regular time compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems proper and just.

119.    Plaintiff seeks recovery of attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b) and pursuant to the Minnesota FLSA.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, on behalf of herself and the Rule 23 Class, prays for judgment against Defendants as follows:

1.    For class certification and for designation of Plaintiffs as class representative and their counsel as class counsel;

2.    That the conduct of Defendants as described herein be determined and adjudicated to constitute conversion and unjust enrichment and an award be made for any

17

and all consequential damages flowing from those actions;

3.   That the conduct of Defendants as described herein be determined and adjudicated to be in violation of Minn. Stat. § 177.24, for damages in the amount of Plaintiffs' and each member of the Rule 23 Class's unlawfully diverted gratuities, plus an additional equal amount as liquidated damages, all costs, disbursements, witness fees, and attorneys' fees incurred in the prosecution of this claim, for all available civil penalties, and all other legal and equitable relief available pursuant to Minn. Stat. § 177.24, Minn. Stat. § 177.27 and other applicable statutes;

4.   Declaring Defendant's conduct in violation of Section 177.24 of the MFLSA;

5.   An award in an amount equal to Plaintiff's and the Putative Class's diverted tips or gratuities;

6.   An award in an amount equal to Plaintiff's and the Putative Class's diverted tips as liquidated damages;

7.   An award in an amount up to $1,000 per violation in civil penalties under Minnesota Statutes 177.27;

8.   An award of all reasonable costs, disbursements, and attorneys' fees incurred prosecuting this case;

9.   Under Minn. Stats. §181.03 Subd. 3, twice the amount in dispute any other remedies provided by law, and a civil penalty of not less than $700 nor more than $3,000 per violation;

10.   Under 26 U.S.C. §7434. Damages in an amount equal to the greater of $5,000 or the sum of (1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to

18

resolving deficiencies asserted as a result of such filing), (2) the costs of the action, and

(3) in the court's discretion, reasonable attorneys' fees;

     11.    Unpaid wage penalties under Minnesota Statute §§181.14 and 181.171;

     12.    Damages and liquidated damages under the FLSA and MFLSA as well as

attorney fees and costs.

     13.    For all such further relief as the Court deems equitable and just; and

     14.    Costs and disbursements, and pre and post-judgment interest.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

Dated: June 9, 2021                **SATRE LAW FIRM**

                                    */s/ Eric D. Satre*
                                    Eric D. Satre, MN Bar No. 183015
                                    Attorney for Plaintiff
                                    INTERNATIONAL PLAZA
                                    7900 International Drive, Suite 300-7044
                                    Bloomington, MN 55425
                                    Telephone: (651) 212-4919
                                    Facsimile: (651) 212-4203
                                    esatre@satrelaw.com
                                    admin@satrelaw.com

## ACKNOWLEDGMENT

    Plaintiff, by and through the undersigned, hereby acknowledges that sanctions,

including costs and disbursements, and reasonable attorney fees may be awarded pursuant

to Minnesota Statutes, sec. 549.211 et seq. to the party against whom the allegations in this

pleading are asserted.

Dated: June 9, 2021                 */s/ Eric D. Satre*
                                      Eric D. Satre (Atty. Id. # 183015)